## IN THE COURT OF APPEALS OF IOWA

No. 20-0725
Filed October 7, 2020

**IN THE INTEREST OF D.W. and T.W.,**
**Minor Children,**

**M.W., Father,**
 Appellant.
_____

 Appeal from the Iowa District Court for Des Moines County, Jennifer S. Bailey, District Associate Judge.

 A father appeals the termination of his parental rights to two sons.
**AFFIRMED.**

 Trent A. Henkelvig, Danville, for appellant father.

 Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

 Joshua P. Schier of Cray Law Firm, PLC, Burlington, attorney and guardian ad litem for minor children.

 Considered by Tabor, P.J., and May and Greer, JJ.

**TABOR, Presiding Judge.**

A father, Morgan, appeals the order terminating his parental rights to his two sons—eight-year-old D.W. and four-year-old T.W.[1]  Because Morgan recently left prison, he seeks six more months to prepare for parenting.[2]  Morgan also contests the State's reasonable efforts, pointing to the lack of visitation after his release from the halfway house.  And lastly, he urges that a guardianship for the boys with their uncle and aunt is "an available option" and more appropriate than termination.

In its order, the juvenile court lauded Morgan's strong bond with his sons, noting their connection could not be quantified.  But the court decided time was not on Morgan's side.  To illustrate, the court offered this striking summary of the quantifiable aspects of the case:

> Forty-four months is the number of months the Department has given Tiara and Morgan services.  Twenty-four months is the length of time these boys have been removed from their parents.  Nine is the number of foster homes and relative placements these boys have endured.  Six months is the amount of months in this case that Morgan [] was not in jail or prison.  Five is the number times Tiara and Morgan have successfully completed in-patient substance

---

[1] The boys' mother, Tiara, consented to the termination of her parental rights and does not appeal.

[2] On this issue, Morgan's counsel includes one sentence in his petition on appeal: "That the state did not meet its burden to show that the Boys could not be safely returned to their Father's home without suffering adjudicatory harm."  Even under the abbreviated briefing allowed by Iowa Rules of Appellate Procedure 6.201 and 6.1401–Form 5, that general conclusion fails to properly present the issue for our review.  Plus, Morgan's only request at the termination hearing was for "more time."  He did not assert he was ready to assume custody of D.W. and T.W. on the date of the termination hearing.  *See In re Z.P.*, ___ N.W.2d ___, ___, 2020 WL 5268435, at *5 (Iowa 2020) (reiterating that statute required parent to be in a position to take custody of the child "at the time of trial").  Thus, we find Morgan waived any challenge to the statutory basis for termination under Iowa Code section 232.116(1)(f) (2020).

abuse treatment in this case. Zero is the number of months longer that these boys should have to wait to see who is going to raise them.

After reviewing these numbers, as well as the less measurable parts of the record, we agree with the court's bottom line.[3] First, the record does not show Morgan will be able to raise his sons after a six-month extension. Second, Morgan was not denied reasonable efforts toward reunification. And third, the court rightly rejected his request to preserve his parental rights and to place the children in a guardianship.

## I.    Postponing Permanency

More than four years ago, the Iowa Department of Human Services (DHS) became involved with Morgan's family. The parents rushed D.W., who was then a toddler, to the emergency room because he ingested methamphetamine. The family received voluntary services, including substance-abuse and mental-health interventions. The DHS removed the children from the parents' care in October 2016 then returned them in June 2017. Tiara and Morgan cared for the children together from then until March 2018—the only stretch Morgan has parented in person. Morgan was arrested that March and incarcerated until November 2019.[4] Morgan did have some visits, as well as frequent telephone contact with the children while in prison.

---

[3] We review termination proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

[4] The DHS removed the children from Tiara again in January 2019 when she took a drug overdose while caring for them. The boys went to live with Tiara's brother and his wife, where they stayed for the rest of the case.

At the time of the permanency hearing in January 2020, Morgan was living at a halfway house. He had a job and was working to pay off his fines and restitution debts. Morgan anticipated moving out of the halfway house soon. During his testimony, he acknowledged his long-standing drug abuse and explained that he took Suboxone daily to address his opioid addiction. He had not used illicit drugs since his arrest in March 2018.

Morgan tested positive for marijuana in February 2020. He claimed the use was accidental—that someone handed him a "vape pen," and he inhaled thinking it was tobacco. Despite that violation, the halfway house released Morgan in mid-March. By the April termination hearing, Morgan had secured his own housing. The case worker testified that the DHS had not visited the house to determine whether it was safe for children because she did not learn of his new address until a few days before the termination trial. On top of that, by early April the novel coronavirus and DHS guidelines for the COVID-19 pandemic moved Morgan's visitations from in-person to telephonic.

On appeal, Morgan asserts the State "in no way showed that it is unlikely that if granted a six-month extension that the boys could not be returned to their Father's care." *See* Iowa Code § 232.104(2)(b). Contrary to Morgan's assertion, "[t]he burden is not on the State to prove an extension is not appropriate." *See In re K.G.,* No. 18-1187, 2019 WL 719047, at *2 (Iowa Ct. App. Feb. 20, 2019). Rather, to grant an extension, the juvenile court needs evidence to support a finding the parent could care for the children within six months. When considering a delay in permanency, the court must remember "if the plan fails, all extended

time must be subtracted from an already shortened life for the children in a better home." *In re A.A.G.*, 708 N.W.2d 85, 92–93 (Iowa Ct. App. 2005).

We do not favor delaying permanency for D.W. and T.W. Morgan admittedly has a history of addiction that he has only addressed through his incarceration. The DHS started providing Morgan services four years ago. Given this timeline, the record does not show that six more months of services would prevent termination.

## II. Reasonable Efforts

The DHS must "make every reasonable effort" to return children home as quickly as possible consistent with their best interests. Iowa Code § 232.102(7); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). We focus on the services provided and the parent's response, not on the services the parent now claims the DHS failed to provide. *C.B.*, 611 N.W.2d at 494.

Morgan claims he did not receive reasonable efforts because the DHS did not allow visits at his home after his release from the halfway house. In other words, Morgan focuses on a single month out of his four-year involvement with the DHS. The State responds that "the addition of four weeks of in-home visits would not have changed the outcome of the termination hearing." We agree. Over the life of the case, the DHS made reasonable efforts at reunifying this family. But Morgan's incarceration subverted that goal.

## III. Guardianship

Finally, Morgan contends "termination is not the least restrictive alternative considering the boys have been in family placement and a guardianship is an available option." The juvenile court ruled that a guardianship was inappropriate

"due to the amount of services both parents were offered to remedy their parenting deficiencies, the ages of the children, their bond with their aunt and uncle and their immense need of permanency."

Like the juvenile court, we reject Morgan's proposal that D.W. and T.W. be placed in a guardianship. Guardianships are not "legally preferable" alternatives to termination. *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). We have found a guardianship appropriate when "no functional difference" existed between guardianship and termination based on a child's placement with his grandmother. *B.T.*, 894 N.W.2d at 33 (holding ten-year-old's placement with grandmother as his guardian was no less permanent than requiring grandmother to adopt child). This case is unlike *B.T.* in several ways. The children here are younger, and they have struggled at times in the care of their maternal uncle and aunt. While their placement is stable, and their uncle and aunt seek to adopt, these relatives do not have the same protective capacity as B.T.'s grandmother did. The termination of Morgan's parental rights will provide the aunt and uncle with more autonomy as they move toward integrating the boys permanently into their family.

**AFFIRMED.**